IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|    Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-55(1) |
| | § | C.A. No. C-05-212 |
| ADAN SALAS,[1] | § | |
| | § | |
|    Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS,
DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Movant Adan Salas' ("Salas") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 77).[2] Salas also filed a supporting memorandum (D.E. 87, 90),[3] which the Court has considered.

On October 21, 2005, the government filed an answer and a motion to deny relief under Rule 8(a) of the Rules Governing § 2255 Proceedings. (D.E. 94, 95). On November 16, 2005, Salas filed a reply. (D.E. 96). For the reasons set forth below, the Court

---

[1] In his motion, Salas identifies himself in the typed caption as "Adam Salas-Perez," but additional identifying information in his motion, such as his prisoner number and his criminal case number, reflects that he is the defendant Adan Salas. Additionally, his signature on the motion appears to read "Adan Salas." The Court utilizes this name, which was the name used in the style of his criminal case.

[2] Dockets entries refer to the criminal case, C-03-cr-55.

[3] The memorandum was initially stricken because Salas failed to sign it. (D.E. 87, 88). He then re-filed it, but it was stricken because it did not contain an original signature. (D.E. 90, 91). Despite the document being stricken, the Court has nonetheless reviewed the substance of the memorandum in ruling on Salas' § 2255 motion.

1

GRANTS the government's motion to dismiss (D.E. 95), and DENIES SALAS' motion. Additionally, the Court DENIES SALAS' motion for transcripts (D.E. 81) and DENIES him a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTS AND PROCEEDINGS

**A.     Summary of Offense**[4]

On February 4, 2003, a truck pulling an empty boat trailer arrived at the Sarita, Texas Border Patrol checkpoint for an immigration inspection. There was a female passenger in the vehicle, and the driver was identified as Alonzo LNU. The driver stated that he was en route to Corpus Christi, Texas to pick up a boat. The Border Patrol agents observed that the driver was very nervous during the questioning. U.S. customs and South Texas Task Force agents subsequently observed the truck and trailer traveling north on U.S. Highway 77, near Kingsville, Texas. The agents followed the truck and empty boat trailer into Corpus Christi, Texas and observed the driver enter the RitePlace Storage facility on South Padre Island Drive. The trailer was parked inside connecting storage units 334 and 348. A vehicle registration check revealed that the vehicle belonged to Kathryn L. Salas.[5] The address listed on the vehicle registration belonged to Adan Salas.

---

[4] The summary of the offense is taken from the Presentence Investigation Report ("PSR") at ¶¶ 3-14.

[5] Kathryn L. Salas is Salas' wife.

On February 5, 2003, U.S. Customs served the manager of the storage facility with a Customs Controlled Substances Subpoena requesting information on any unit being leased by Adan Salas. The manager provided documents indicating that Salas leased units 334 and 348, which were connecting "drive through" units and that Saul De La Pena was listed as an authorized user of the same units.

From February 5, 2003 through February 16, 2003, agents monitored the activity of the two storage units by checking the computer printouts of the codes used to open the gate of the storage facility and by reviewing a video tape of the traffic entering and exiting the gate. During this time period, Salas' truck was observed on several occasions leaving the facility pulling an empty boat trailer, then seen returning with the trailer and a boat.

On February 17, 2003, a U.S. Customs agent observing the storage facility walked past units 334 and 348. At the overhead door on the north side of the drive-through unit, the agent detected a strong odor of marijuana. Surveillance was then initiated on the facility and suspect storage units (from the unit next to 334). On the same date, the agents observed Noe Cortez entering the storage facility driving a Mitsubishi that was registered to and owned by Adan Salas. Cortez entered and then exited unit 334. He then was followed by agents to a Wal-mart store on South Padre Island Drive, where he met a subject later identified as Joseph Reyes. Less than an hour later, Cortez returned to the storage facility and again parked the vehicle inside unit 334. Shortly thereafter, De La Pena and Salas arrived at the storage facility and met with Cortez. All three subjects entered the

storage unit and were later overheard by one of the agents talking about loading the Mitsubishi with marijuana.

Salas subsequently left and arrived at the Wal-Mart store in the Mitsubishi containing the marijuana, and gave the keys to Reyes. After Reyes checked the contents of the trunk, he left in the Mitsubishi.

Shortly thereafter, a traffic stop was initiated on Reyes, and 25.2 kilograms (approximate net weight) of marijuana were discovered in a white box in the trunk. Salas was arrested approximately twenty minutes later in the parking lot of a Hollywood Video store. De La Pena and Cortez were also arrested a short time later.

De La Pena consented to the search of units 334 and 348 at the storage facility.[6] Upon entry to the storage unit, 68 bundles of marijuana, containing 352.8 kilograms (approximate net weight) were discovered.

## B.     Criminal Proceedings

Salas was charged with several co-defendants in a three-count indictment on February 20, 2003. (D.E. 1). He was charged with: (1) knowingly and intentionally conspiring to possess with intent to distribute approximately 420 kilograms of marijuana from February 4, 2003 to February 17, 2003, in violation of §§ 841(a)(1), 841(b)(1)(B) and 846 ("Count One");[7] (2) knowingly and intentionally possessing with intent to distribute

---

[6] But see discussion infra at Section II.B. regarding Salas' motion to suppress based on a lack of voluntary consent.

[7] The amounts in this count appear to be based on the debriefing of one of Salas' co-defendants.

approximately 28 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)("Count Two");[8] and (3) knowingly and intentionally conspiring to possess with intent to distribute approximately 392 kilograms of marijuana, in violation of §§ 841(a)(1), 841(b)(1)(B) and 846 ("Count Three").

Salas' retained counsel filed a motion to suppress, arguing the evidence of the drugs seized as a result of the search of the storage area should be suppressed. (D.E. 16). In particular, Salas argued that he, as the lessee of the storage units, had refused to give consent for the search. He further contended that De La Pena had initially refused to give consent and had stated that he had no authority to give permission for a search of the units. It was only after "much badgering and intimidation" that consent was given. Salas argued, however, that the consent was involuntary and not intelligently given. (D.E. 16). The Court granted the motion, suppressing evidence of the drugs seized from the storage area, but noted that it would allow evidence of the drugs found in the car. (D.E. 24, 25).

On March 31, 2003, the government filed an information of prior convictions, notifying Salas and the Court that it intended to seek enhancement of Salas' sentence pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(D), based on a prior felony drug conviction. (D.E. 31). On the same date, Salas pleaded guilty to Count Two pursuant to a written plea agreement. (D.E. 32, 33). In exchange for his guilty plea to Count Two, the government

---

[8] The indictment actually referenced § 846, the conspiracy statute in Count Two, but, at rearraignment, the government noted that Count Two was a possession with intent to distribute count, and not a conspiracy count. It moved to strike the reference to Section 846 as surplus, and the Court indicated that it would not consider Count Two as a conspiracy count. (D.E. 83, Rearraignment Transcript "R. Tr. at 16).

agreed to move for the dismissal of Counts One and Three at the time of sentencing, to recommend that he receive maximum credit for acceptance of responsibility, and to recommend that he be given a sentence within the guideline range. (R. Tr. at 22; D.E. 33).

On June 27, 2003, Salas was sentenced by this Court to 120 months in the custody of the Bureau of Prisons, to be followed by a four-year supervised release term. The Court also imposed a special assessment of $100. (D.E. 61). Judgment of conviction was entered on July 7, 2003. (D.E. 65). Salas did not appeal.

Also on June 27, 2003, Salas was sentenced by this Court in his revocation proceedings arising out of Brownsville Division of this Court, Cr. No. B-96-338(1). In that case, this Court revoked his supervised release, sentencing him to a term of imprisonment of 18 months, to be served consecutively to the sentence imposed in the instant case. (1:96-cr-338, D.E. 60). Salas did not appeal from that judgment, either.

The Court subsequently entered an amended judgment in this case on November 12, 2004, which reduced Salas' sentence from 120 months to 96 months. On April 27, 2005, Salas filed the pending motion for relief pursuant to § 2255. (D.E. 77). His motion is timely. The government filed a response and a motion to dismiss on October 21, 2005. (D.E. 94, 95). As noted, the Court has also considered Salas' reply. (D.E. 96).

### III. MOVANT'S ALLEGATIONS

In his motion, Salas asserts four grounds for relief.[9] The first three issues all challenge the Court's determination of his sentence under the sentencing guidelines. Specifically, he claims that the Court improperly enhanced his offense level pursuant to § 3B1.1(A), based on its finding concerning Salas' role in the offense. Salas appears to be claiming that he did not manage or supervise the sufficient number of individuals, and that the criminal activity was not otherwise extensive.

Second, he claims that the Court said in open court that it would adjust his revocation sentence in Cr. No. B-96-338 (imposed on the same date as his sentence in this case) to run concurrently to the sentence imposed in the instant case upon him being awarded a Rule 35 reduction. He claims that the Court erred in failing to order the two sentences to run concurrently.[10]

Third, he claims that it was improper for the Court to utilize the amounts of drugs in the dismissed counts as relevant conduct at sentencing.

---

[9] Salas also repeatedly references that he "understood" or was "hoping" that his counsel would file an appeal on his behalf. Nowhere does he state that he actually asked counsel to file an appeal on his behalf, In fact, in his reply, Salas admits that he did not explicitly instruct his counsel to file an appeal, and argues that he was "unaware that the burden" was on him to instruct his attorney to appeal. (D.E. 96 at 2-3). His admission is consistent with the affidavit of his retained counsel, Alfredo Montelongo, which clearly states that defendant never asked him to appeal. In any event, the Court does not construe his motion as raising a direct claim that he was denied his right to appeal and thus does not address such a claim herein. Rather, the Court interprets his statements as a claim that his counsel's failure to appeal constitute "cause and prejudice" for his failure to raise the first three claims on appeal.

[10] In fact, the Court made no such statement, as evidenced by both the transcript of his sentencing in this case and the digital recording of the sentencing for the revocation of supervised release. Salas' attorney argued on behalf of his client that the revocation sentence should be ordered to run concurrently with the sentence in the instant case, but the Court expressly declined to run the two sentences concurrent.

Fourth, he claims that his sentence violates his Sixth Amendment right to a jury trial because it was enhanced based on facts neither found by a jury beyond a reasonable doubt nor admitted by him. He relies for support on United States v. Booker, 125 S. Ct. 738 (2005). This claims appears to be both an independent ground for relief and also to incorporate his first three claims, because he claims that all of the "enhancements" challenged in his first three grounds violate Booker.

## IV.  DISCUSSION

### A.    Motion for Transcripts

In a motion filed June 14, 2005, Salas requests that the Court order the government to provide him with copies of the transcripts it filed with the Court, and cites to the Court's initial order to respond as evidence that the Court previously ordered that transcripts be given to him. As an initial matter, the Court notes that Salas misunderstood the Court's prior order, which simply required the government to order and make sure that the transcripts were on file with the Clerk. The government was not required to serve a copy of those transcripts on Salas.

To the extent that he is requesting copies of the transcripts at government expense, an indigent defendant has a statutory right to free transcripts in particular circumstances. See 28 U.S.C. § 753(f); United States v. MacCollum, 426 U.S. 317, 96 S. Ct. 2086 (1976). The defendant must, however, establish that the transcripts are needed to decide an issue in a pending suit and that the suit is not frivolous. 28 U.S.C.

§ 753(f). Although Salas' § 2255 motion was pending at the time he requested his transcripts, the Court disagrees that the transcripts were necessary to resolve his claims, or that he needs copies of the transcripts in order to effectively prosecute his motion. Accordingly, his motion for transcripts (D.E. 81) is DENIED.

**B.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

**C.     Procedural Bar**

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can

demonstrate either (1) cause for his default and actual prejudice; or (2) that he is factually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice or (2) that he is factually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999). Salas makes no argument that he is actually innocent. Rather, he simply states that he did not present any of these grounds because his attorney did not appeal his sentence. Salas' ineffective assistance of counsel claim would satisfy the cause and prejudice standard. United States v. Patten, 40 F.3d 774 (5th Cir. 1994) (claim that appellate counsel was ineffective for failing to raise a constitutional issue on direct appeal satisfies the cause and prejudice standard). Thus, the Court considers the merits of those claims, instead of dismissing them based on the procedural bar.

**D.     Challenges to Court's Determination of His Sentence**

As noted, Salas' first three challenges to his sentence are all claims that the Court misapplied the guidelines or sentenced him improperly. Claims that the sentencing guidelines were misapplied are not cognizable in § 2255 motion. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999); United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing

guidelines standing alone is not the type of error cognizable under section 2255."), cert. denied, 516 U.S. 1165 (1996). Thus, these claims are subject to dismissal.

Moreover, to the extent that he is claiming the Court stated that his sentence in this case and in his revocation proceedings would run concurrently and then failed to so order, there is no factual basis for his claim. See supra note 10. Thus, this claim fails on its merits, as well.

**E.     Booker Claim**

Salas' fourth and final claim (which also incorporates his first three to some extent) is that his Sixth Amendment right was violated by the enhancements to his sentence. For support, he relies on the Supreme Court's decision in Booker, but the Fifth Circuit has squarely held that Booker is not retroactively applicable on collateral review. United States v. Gentry, 432 F.3d 600, 605 (5th Cir. 2005). ("we join the several court of appeals that have held that Booker does not apply retroactively to initial § 2255 motions"). Thus, Booker does not provide a basis for relief to a defendant, such as Salas, whose conviction became final before the case was decided. Gentry, 432 F.3d at 603-04 & n.2. Accordingly, Salas' claim pursuant to Booker fails.

In his reply, Salas seems to be arguing that, although Booker has not yet been ruled retroactive, it may be in the future.[11] He thus asks that the Court "hold in abeyance" his

---

[11] Salas cites to the Supreme Court's granting of certiorari in Washington v. Recuenco, 110 P.3d 188 (Wash.), cert. granted, 126 S. Ct. 478 (2005), as proof that the Supreme Court will soon rule on this issue. In fact, however, certiorari was sought and granted in that case to determine "whether error as to the definition of a sentencing enhancement should be subject to harmless error analysis where it is shown beyond a reasonable

§ 2255 motion, until such time as the Supreme Court issues a decision on this issue. It appears, then, that Salas is simply trying to preserve his rights under Booker, in the hopes that the Supreme Court will determine that the case should be applied retroactively. He has cited to no authority, however, and this Court has not found any, allowing a § 2255 movant to merely file a motion as a type of "placeholder" and requiring the district court to allow it to remain pending until the Supreme Court chooses to address the retroactivity of an earlier case.

The Court acknowledges that, if the Supreme Court ultimately decides Booker is retroactively applicable, defendants will have to have filed their § 2255 motions not later than January 12, 2006. Dodd v. United States, 125 S. Ct. 2478, 2482 (2005) (limitations period under § 2255 ¶ 6(3) begins to run on the date on which the Supreme Court initially recognizes the right asserted). January 12, 2006 has now passed and the Supreme Court has not yet ruled on the issue. Cf. Dodd, 125 S. Ct. at 2483 (calling it a "rare case in which this Court announces a new rule of constitutional law and makes it retroactive within one year").

Thus, assuming the rule set forth in Dodd remains unchanged and Congress does not intervene, Salas will be unable to obtain relief under Booker, even if the Supreme Court eventually determines the case should be applied retroactively on collateral review. This

---

doubt that the error did not contribute to the verdict on the enhancement." Petition for Writ of Certiorari, Washington v. Recuenco, 2005 WL 1660296, *i (July 13, 2005); Washington v. Recuenco, 126 S. Ct. 478 (order granting cert.). Moreover, the cited case is a direct criminal appeal, not a collateral proceeding. Thus, the Supreme Court's decision in that case is highly unlikely to address the retroactivity of Booker on collateral review.

harsh result, however, is merely a consequence of a statute that Congress has enacted and that the Supreme Court is "not free to rewrite." See id.  Furthermore, this harsh result does not give this Court license to ignore binding authority.  As the law stands now, Salas is not entitled to relief under Booker, and this Court must apply the law.  See Gentry, supra.

**F.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Salas has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Salas' § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 123 S. Ct. at 1034 (citing Slack, 529 U.S. at 484, 120 S. Ct. at 1604). Similarly, as to those claims that this Court has addressed on procedural grounds, the Court finds that Salas cannot establish either of the Slack criteria. That is, jurists of reason would not debate whether he has stated a valid claim of the denial of a constitutional right, nor would they find this Court's procedural rulings debatable. Accordingly, Salas is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the aforementioned reasons, Salas' motion for transcripts (D.E. 81) is DENIED.

The government's motion to dismiss (D.E. 95) is GRANTED and Salas' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 77) is DENIED. Additionally, Salas is DENIED a Certificate of Appealability.

It is so ORDERED this 19th day of February, 2006.

_____
HAYDEN HEAD
CHIEF JUDGE